Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Houser, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>Detective Timothy Koerner, an individual;<br>Sergeant Williamson, an individual,<br><br>Defendants. | No.: CV-23-01394-PHX-SMB (ESW)<br><br>**FIRST AMENDED VERIFIED COMPLAINT**<br><br>**JURY TRIAL REQUESTED**<br><br>(Assigned to the Honorable Susan M. Brnovich and Referred to the Honorable Eileen S. Willett) |

Plaintiff, Mark Houser, ("Plaintiff") by and through his undersigned counsel, files this First Amended Verified Complaint (the "FAC") against Defendants Detective Timothy Koerner ("Koerner") and Sergeant Williamson ("Williamson").  In support of said FAC, Plaintiff states and alleges the following:

## JURISDICTION AND VENUE

1.      Plaintiff brings this civil rights lawsuit pursuant to the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, 42 U.S.C. § 1985.

2.      The amount in controversy exceeds the minimal jurisdictional limits of this Court.

3.      Jurisdiction is proper pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367(a).

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and in that the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## **THE PARTIES**

5.      Plaintiff Mark Houser is an individual, a citizen of the United States, and a resident of Arizona. At all relevant times to the FAC, Plaintiff resided in Maricopa County, Arizona.

6.      Defendant Detective Koerner is an individual who resided in Maricopa County, Arizona, at all times relevant to this FAC.  Detective Koerner was, at all times relevant to the present FAC, an employee of City through SPD. At all times relevant to this FAC, Detective Koerner was acting under the color of law as a SPD police detective.  He is named herein in his individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

7.      Defendant Sergeant Williamson is an individual who resided in Maricopa County, Arizona, at all times relevant to this Verified Complaint. Sergeant Williamson was, at all times relevant to the present v Complaint, an employee of City through SPD. At all times relevant to this Verified Complaint, Sergeant Williamson was acting under the color of law as a SPD police officer. He is named herein in his individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

8.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

9.     Plaintiff alleges, upon information and belief, that each of the Defendants acted under color of law in committing the acts herein alleged.

## **BACKGROUND / FACTUAL ALLEGATIONS[1]**

10.     Plaintiff lives in a house he owns in Scottsdale, Arizona.

11.     Plaintiff owns and operates his own business, Grand Canyon Business Solutions which employs 15 individuals.

12.     Plaintiff served in, and was honorably discharged from, the Marine Corps, where he was trained in the safe use of firearms.

13.     While Plaintiff has owned and possessed certain firearms, he has never hoarded weapons.

14.     Prior to 2022, Plaintiff's domestic partner, Alia Houser, and their minor son also lived with Plaintiff.

15.     Plaintiff has been under the treatment of a psychiatrist for years and willingly continued his treatment throughout the events of this FAC, but also has continued treatment to this day.

16.     At all times relevant to Plaintiff's causes of action, the City, the SPD, and all other Defendants were also aware that Plaintiff was under his Psychiatrist's care.

17.     Koerner and Williamson could not have believed that Plaintiff was a danger to himself or to others.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

---

[1] Upon information and belief these officers' names are Pearson #879, Sergeant Watts #607, and Michael #1361.
[1] Plaintiff had emailed the same entities in June 2021.

18.     Koerner and Williamson knew that Plaintiff was undergoing treatment with his psychiatrist as shown in the statements placed in a petition for involuntary commitment

19.     Koerner and Williamson knew that Plaintiff was not a danger to himself or others.

20.     Yet, Koerner and Williamson, in reckless disregard to Plaintiff's rights, ignored those simple facts and pressed forward with a plan to commit Plaintiff involuntarily – on multiple occasions and in retaliation to Plaintiff's complaints to law enforcement.

21.     Plaintiff's domestic partner, Alia[2] [3], had told Defendants that Plaintiff was not violent, was not combative, and would not nor had he ever made her feel unsafe from physical or mental harm.

22.     Plaintiff was also not gravely disabled according to his Psychiatrist.

23.     In fact, Plaintiff could not be "persistently or acutely disabled" based on the Court's definition and his ongoing treatment.

24.     This fact was well known by Koerner.

25.     Furthermore, as will be discussed herein, the petition to involuntarily commit Plaintiff that resulted in his confinement on July 16, 2021 was woefully deficient and missing key information and was riddled with falsehoods.

26.     Koerner improperly characterized the facts in support of the petitions he signed to both the admitting agency and the Court.

[2] Plaintiff is not married. Plaintiff has lived together with his Domestic Partner for 14 years.
[3] Arizona does not recognize common law marriage in any form. As such, cohabitating in Arizona will not create any presumption of marriage. A.R.S. § 25-111.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

27.    Koerner improperly characterized to the Court that Plaintiff was unwilling to take prescribed medication. Specifically, Risperdal.

28.    Koerner conveniently forgot to inform the Court that Plaintiff had never been prescribed this medication.

29.    Plaintiff informed Koerner and his employer that this was the case.

30.    Koerner ignored him.

31.    Koerner stated that Plaintiff had said he would kill anyone that came into his home.

32.    This is untrue.

33.    Under the Substance Abuse and Mental Health Services Administration ("SAMHSA"), "Civil Commitment and the Mental Health Care Continuum: Historical Trends and Principles for Law and Practice" report prepared by SAMHSA under contract with the United States Department of Health and Human Services, when commenting on involuntary civil commitment, stated "It should be noted, however, that this approach to civil commitment has received harsh legal criticism, the hearing process even being labelled a "charade" for failing to provide meaningful opportunity for vulnerable individuals to contest the substantial liberty curtailment they face.

Substance Abuse and Mental Health Services Administration: Civil Commitment and the Mental Health Care Continuum: Historical trends and Principles for Law and Practice. Rockville, MD: Office of the Chief Medical Officer, Substance Abuse and Mental Health Services Administration, at 6., 2019.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

34.     On May 7, 2021, Officer Stephenson conducted an Event Field Contact at Plaintiff's residence.

35.     During this contact, Officer Stephenson entered the back door of Plaintiff's home while Plaintiff was eating a pizza with Plaintiff's son.

36.     Officer Stephenson made several unnecessary, and irrational, demands of Plaintiff that amounted to harassment.

37.     Officer Stephenson continued to take unjustified actions to escalate the encounter, including calling the City of Scottsdale Fire Department to Plaintiff's home.

38.     During the recorded interaction with Officer Stephenson described herein, Plaintiff attempted to deescalate the encounter and asked Officer Stephenson to call his sergeant.  Officer Stephenson refused.

39.     Thereafter, Officer Stephenson drafted a Field Report that dramatically misrepresented the nature, and facts, of the encounter.

40.     Of note, Plaintiff's property is situated on 2.52 acres. The house is set back far into the property.

41.     There is dense vegetation on the property.

42.     When Stephenson entered the house from an "open arcadia door", he had his hand on his service weapon.

43.     Plaintiff, visibly surprised, asked why the officer was there and why the officer had his hand on his service weapon.

44.     Plaintiff was scared for his life.

45. At the end of this interaction, officers told him he had done nothing wrong and that they would have arrested him if he did.

46. On May 9, 2021, at 3:37 p.m., Kelly Wills emailed Plaintiff's domestic partner to offer multiple options for picking Plaintiff up for involuntary commitment.

47. Wills also texted Plaintiff's domestic partner on May 12, 2021.

48. Upon information and belief, Wills was prodded by Bogumill, Stephenson, Williamson, and Koerner to get Alia to provide statements that would allow them to attempt to pickup Plaintiff and involuntarily commit him.

49. Later that day, SPD officers arrived at Plaintiff's home.

50. Wills shared identifying information about Plaintiff's treating physician, John Scialli, MD ("Dr. Scialli"), and private medical information, with Plaintiff's domestic partner without Plaintiff's consent.

51. Upon information and belief, Wills, thereafter, encouraged Plaintiff's domestic partner to file a complaint against Dr. Scialli with the Arizona Medical Board.

52. Thereafter, Plaintiff left his home because he overheard his wife talking on the phone with Wills.

53. As Plaintiff exited his neighborhood, he observed a City of Scottsdale Fire Department vehicle that was already waiting for SPD to arrive.

54. In response to Plaintiff's request for a copy of the SPD Field Report regarding the events of May 9, 2021, SPD denied the event ever happened – in spite of video, audio, and electronic evidence to the contrary.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

55.     On May 10, 2021, Dr. Scialli, one of Plaintiff's treating physicians since April 2019, wrote a letter to his colleagues at Valley Hospital, in Phoenix, Arizona.  The purpose of the letter was to request a secondary evaluation from Valley Hospital, in light of the events on May 7th and May 9th.

56.     Dr. Scialli expressed concerns that SPD officers were misrepresenting Plaintiff's psychiatric condition by making statements that Plaintiff was delusional, bipolar, and experiencing psychosis due to amphetamine toxicity.

57.     In direct contrast, Dr. Scialli observed that Plaintiff was not hypomanic, or delusional; and Plaintiff's lab tests showed no amphetamines on board.

58.     On or about May 11, 2021, the Arizona Department of Child Safety Services ("DCS") received a report of suspected child abuse, neglect, or abandonment regarding a child in Plaintiff's care.

59.     DCS determined the claims were unsubstantiated and closed the case.

60.     On May 14, 2021, the Arizona Department of Victim Services sent a letter to Plaintiff's domestic partner, to inform her the Prosecutor's Office for Maricopa County, Arizona had reviewed the DCS report described above and declined to prosecute Plaintiff.

61.     On May 19, 2021, Plaintiff's domestic partner submitted an Application for an Involuntary Commitment Evaluation, pursuant to A.R.S. § 36-520.

62.     In that application, she said that Mark was prescribed Adderall but no longer used it.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

63.     Alia made multiple false statements in this application – including stating that Plaintiff says that he will "destroy the cult" and that Plaintiff accused her of multiple affairs.

64.     She claimed that Plaintiff was delusional and was seeing things on video clips from their surveillance system that were not there.

65.     This is untrue.

66.     Alia claimed that Plaintiff would take out guns and bullets and place them on the counter because Plaintiff was going to protect them from a cult.

67.     This is untrue.

68.     Alia stated that Plaintiff would discuss sexual positions and that Alia loved these positions – all in front of their son.

69.     This is untrue.

70.     That same day, Alia filled out a second Application for an Involuntary Commitment Evaluation, pursuant to A.R.S. § 36-524.

71.     Much of the same type of claims was put into this application.

72.     Additional statements regarding Plaintiff were made.

73.     Alia claimed that Plaintiff would say that he would "destroy this person or that person",

74.     This is untrue.

75.     Alia claimed that Plaintiff would say that he was a "Marine and will shoot anyone that comes on our property".

76.     This is untrue in this context.

77.   Plaintiff is a Marine.

78.   Plaintiff never had any combat experience, however Plaintiff was taught gun safety and safe handling techniques to prevent mistakes, misconduct, or otherwise in the handling of weapons.

79.   Plaintiff is not nor has ever been a violent person.

80.   Plaintiff has always expressed that he would protect his family from threats.

81.   Alia made statements that Plaintiff's psychiatrist has done nothing to help Plaintiff – despite Plaintiff regularly visiting and treating with him.

82.   Alia is not a medical professional.

83.   Upon information and belief, Alia made these applications because she was pushed to do so by SPD Officers or employees.

84.   On or about May 20, 2021, at approximately 12:40 a.m., Plaintiff observed four (4) SPD patrol cars in the cul-de-sac at the end of Plaintiff's driveway.

85.   Plaintiff observed that one of the SPD officers was holding a rifle.

86.   The SPD officers and apparent medical staff present under the auspice of A.R.S. §§ 36-520, 36-524, and 36-525(A), and with a false Pick-Up Order from CBI, intended to apprehend Plaintiff and transport him to CBI's Community Psychiatric Emergency Center.

87.   They further claimed that Plaintiff was armed with a gun and dangerous.

88.   This is false.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

89.    The purported reasons for the false Pick-Up Order (described above) were that (1) Plaintiff had a Psychiatric Advanced Directive in place; (2) ***Plaintiff presented a risk of harm to himself, or others***; and (3) a gun was involved.[4]

90.    Plaintiff's own Psychiatrist – *at this time* – did not believe that Plaintiff presented a risk of harm to himself or others.

91.    A gun could not have been involved, as Plaintiff did not have any guns because SPD officers seized all of Plaintiff's guns on May 9, 2021.

92.    There was apparent reliance on a charge to Plaintiff's bank account for $500 at the Scottsdale Gun Club.

93.    This was a recurring subscription fee.

94.    Plaintiff had no weapons nor had he made any attempts to obtain any weapons.

95.    Had the Defendants done any inquisition or research they would have known this did not give Mark access to guns.

96.    On May 20, 2021, Officer Bogumill conducted a Field Interview of Plaintiff's domestic partner who told Officer Bogumill she believed SPD seized all of Plaintiff's guns on May 9, 2021.

97.    On May 20, 2021, Officer Bogumill contacted Plaintiff via his cell phone.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

---

[4] The Pick-Up Order does not elaborate how a gun was involved and states that it was unknown at the time whether Plaintiff had access to said gun. In fact, Plaintiff no longer had any weapons and had not purchased any new weapons.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

98.     In that conversation Plaintiff clearly told Officer Bogumill that he was under his psychiatrist's care and had voluntarily received a secondary mental health evaluation from Valley Hospital in the last week.

99.     Plaintiff never even refused to submit to a voluntary evaluation when speaking with Bogumill.

100.    Plaintiff further informed Officer Bogumill that Alia was not his legal wife.

101.    Because of Bogumill's actions, as discussed above, DCS became involved.

102.    On May 27, 2021, DCS sent a Notice of Unsubstantiated Child Safety Report to Plaintiff.

103.    The Notice confirmed that DCS received a report; could not substantiate the report; and would be closing Plaintiff's case.

104.    Defendants never forcefully picked Plaintiff up on these May applications because it was determined that Plaintiff was not in fact a danger to anyone.

105.    Between May 20, 2021 and July 16, 2021, Plaintiff did not know where Alia or their son was located.

106.    Alia had absconded with $250,000 of Plaintiff's company's money and had disappeared with their son.

107.    Plaintiff had no clue about their whereabouts.

108.    Unbeknownst to Plaintiff, Alia emailed Evelyn Hernandez – upon information and belief a Scottsdale Police Officer – stating that the gun club charge was a membership charge and not for guns. She further stated that she does not believe Plaintiff has any weapons.

109. On or about June 7, 2021, Plaintiff emailed the Scottsdale City Council detailing the harassment that had occurred at his expense.

110. Plaintiff expressed how concerned he was for his safety from the Scottsdale Police department and further expressed that he was seriously considering moving to Phoenix, Arizona and relocating his business to the same as a result of the continued actions by Scottsdale Police Officers causing Plaintiff to fear for his safety.

111. In the meantime, Plaintiff had met with Roger Geisler at the Arizona Attorney General's Office to discuss the issues he was facing.

112. On July 1, 2021, Alia sent a highly disturbing email with Plaintiff's personal health information and a narrative about how Plaintiff is not well and needs to do the things she says he needs to do.

113. This was sent to all of Plaintiff's work colleagues, investors, and family members as well as members of DCS, care facilities, and the Scottsdale Police Department – including Hernandez, Kelly Wills, and Michelle Carlucci.

114. Multiple individuals replied back to Alia that they disagree with her assessment and have not seen anything in over 25 years that would support the assertions that Alia was making.

115. Everyone copied on Alia's original email was copied on those responses.

116. Again, at this time, Alia was "incognito" and Plaintiff had no idea about her whereabouts.

117. All of these facts were known to Williamson and Koerner.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

118.   On or about July 13, 2021, Plaintiff contacted SPD's Internal Affairs Department because of the constant harassment by Defendants.

119.   Thereafter, Plaintiff had a 90-minute meeting with three (3) Internal Affairs officers.[5]

120.   The purpose of the meeting was to bring the police misconduct committed against Plaintiff to the attention of City and SPD.

121.   Plaintiff was very frustrated and somewhat angry that the SPD had continued to show up on his property even after knowing that the statements being made were false in nature.

122.   Plaintiff was upset that nobody at the SPD was taking his side of the story seriously.

123.   Plaintiff explained that it was actually his domestic partner who had been erratic and shown mental health issues and that he was doing everything he could to keep the family together.

124.   To wit, she had taken a large sum of money from Plaintiff's business and had disappeared with their son.

125.   After the meeting, outside in the parking lot away from the view of any cameras, Sergeant Watts #607 told Plaintiff that we have people you can talk with.

126.   Plaintiff declined and informed Sergeant Watts #607 he was already under the care of a licensed psychiatrist.

---

[5] Upon information and belief these officers' names are Pearson #879, Sergeant Watts #607, and Michael #1361.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

127.    During that interaction, Plaintiff asked Sergeant Watts #607 whether he believed there was anything wrong with Plaintiff, in terms of his mental health.

128.    In response, Sergeant Watts #607 told Plaintiff he did not believe anything was wrong with Plaintiff.

129.    On July 15, 2021, in direct contrast to the statements made by SPD officers just two (2) days prior and unbeknownst to Plaintiff, Detective Koerner – upon information and belief after working directly with other Scottdale police employees including Willis, Hernandez, Stephenson, and Bogumill to figure out a way to further harass Plaintiff– purportedly submitted an Application to Connections AZ, Inc. for an Involuntary Evaluation of Plaintiff, pursuant to A.R.S. § 36-520 and A.R.S. § 36-524.

130.    An emergency application provides that a regional authority provide services or treatment to the individual as an alternative to admission.

131.    A.R.S. § 36-520 specifically states:  If the applicant for the court-ordered evaluation presents the person to be evaluated at the screening agency, the agency shall conduct a prepetition screening examination. Except in the case of an emergency evaluation, the person to be evaluated shall not be detained or forced to undergo prepetition screening against the person's will.

132.    Under A.R.S. § 36-524, a written application for emergency admission shall be made to an evaluation agency before a person may be hospitalized in the agency.

133.    Under A.R.S. § 36-527, a person taken into custody for emergency admission may not be detained longer than twenty-four (24) hours (excluding weekends and holidays), unless a Petition for court-ordered evaluation is filed.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

134. Again, Plaintiff was under psychiatric care and was not a danger to self or others.

135. The application only lists that Plaintiff was a danger to self or others and was persistently or acutely disabled – facts unverified by Defendants.

136. It further stated that Plaintiff was unwilling to be treated.

137. Again, Plaintiff had a regular psychiatrist. He never refused to be treated.

138. Plaintiff had hired private attorneys at that time to battle the constant harassment and false pickup orders.

139. Koerner notes that in his typewritten applications.

140. Disturbingly, the applications Koerner filled out were full of many of the same lies from the May 19, 2021 applications and embellished them further.

141. Koerner writes that "subject lately appears to be decompensating (making more outrageous statements about wife/PD)".

142. This is untrue.

143. Koerner writes that Alia had made statements about feeling unsafe around Plaintiff.

144. This is untrue.

145. In this application, Koerner discussed Risperdal that Plaintiff was not taking.

146. Plaintiff was never prescribed Risperdal.

147. Koerner repeats the same lies about Plaintiff claiming to hear things that were not there and the same lie about Plaintiff stating he "was a 'Marine' (knows how to do so)."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

148.    Call recordings can include sounds and noises that are not completely discernable. That Plaintiff and Koerner disagree about that point is not something that rises to persistent and acute disability.

149.    Koerner continues in a near copy and paste from the May 19, 2021 applications that Plaintiff claimed he would kill anyone that came into the home or that Cult members should be killed.

150.    Again, these are untrue statements.

151.    Koerner references an email sent on July 3, 2021 and July 4, 2021 to support his statement that Plaintiff claimed he would kill anyone that came into his house or that everyone dies that does not have a ticket.

152.    Plaintiff did not make those statements and never sent an email stating the same.

153.    Had they done one simple thing – contact Plaintiff's psychiatrist, they would have known that Plaintiff was not a danger to self or others and was definitively not persistently or acutely disabled.

154.    Had they conducted a prepetition screening, by clear and convincing evidence it would have shown that Plaintiff was under proper treatment and an involuntary commitment would have been not only unnecessary, but it would have shown that Plaintiff was not subject to an involuntary commitment under Arizona law.

155.    Plaintiff runs a highly successful business. He has done so for years.

156.    Plaintiff has many employees and colleagues.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

157.   None of them have ever reported that Plaintiff appeared even remotely disabled.

158.   In fact, many of them provided character letters detailing that the claims that Defendants had been making were demonstrably false.

159.   On July 16, 2021, Plaintiff emailed [6] the Scottsdale City Council, the Federal Bureau of Investigation, and Roger Geisler (a Law Enforcement Agent with the Arizona Attorney General's Office) and told the City, SPD, its Officers and Detectives that his Domestic Partner had disappeared with his son, removed money from his company's bank account and was behaving uncharacteristically. Plaintiff also told them to stop harassing him.

160.   On July 16, 2021, approximately four (4) hours after sending the email, SPD Officers and Detectives including Sergeant Williamson and Detective Koerner – who both knew that the pickup was based on entirely false information - arrived at Plaintiff's business office in Scottsdale, Arizona and forcefully apprehended Plaintiff, handcuffed him in front of his employees, and delivered him, without cause or consent, into the custody of Connections AZ.

161.   This was not an emergent application.

162.   This was done in bad faith and based on false information.

163.   When SPD Officers and Detectives forcefully apprehended Plaintiff (as described above) without justification and based on false information in the petition, none of the SPD Officers or Detectives present – including Sergeant Williamson and Detective

---

[6] Plaintiff had emailed the same entities in June 2021.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Koerner - provided Plaintiff with a copy of a Petition for Treatment, Detention Order, or Notice of Hearing for Treatment; and failed to advise Plaintiff of any of his rights.

164.    Defendants apprehended Plaintiff on a Friday because they knew that weekends would not count in the calculations.

165.    This was a deliberate and conscious decision by Defendants to keep Plaintiff confined throughout the weekend plus additional days.

166.    On July 19, 2021 – three (3) days **after** SPD Officers and Detectives forcefully apprehended Plaintiff (as described above in ¶ 44) – Commissioner Annielaurie Van Wie signed a Mental Health Detention Order, pursuant to A.R.S. § 36-529(A), in Maricopa County Superior Court, Matter No. MH2021-005665.

167.    This order was signed and issued based on false information provided by Defendants.

168.    Had the Judge been provided information regarding Plaintiff's regular care under his psychiatrist, and that he was not acutely disabled and was not a danger to self or others the issues presented in this FAC would never have occurred.

169.    On July 22, 2021 – six (6) days after SPD Officers and Detectives forcefully apprehended Plaintiff (as described above in ¶ 44) – SPD Detective M. #8577 certified to the Maricopa County Superior Court that he personally served the Mental Health Detention Order, issued by Commissioner Annielaurie Van Wie, by apprehending and/or detaining Plaintiff and serving Plaintiff with a Petition for Treatment, Detention Order, and Notice of Hearing for Treatment.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

170.   An Application for Emergency Evaluation is only sparingly used when a person is in immediate danger of hurting themselves or others and refuses or is unable to decide to receive voluntary treatment.

171.   As discussed herein, Plaintiff did not meet any of those standards.

172.   An Application for Involuntary Evaluation is only used when there could be a history of behavior that the applicant believes needs psychiatric attention – *and the person does not want treatment.*

173.   As discussed herein, Plaintiff did not meet any of those standards.

174.   Again, his business, his employees, his friends, and his colleagues all report that Plaintiff did not show any signs of psychosis or other mental issues.

175.   Plaintiff's psychiatrist reports the same.

176.   A danger to self can be defined as Constitutes a danger of inflicting serious physical harm on oneself, including attempted suicide or the serious threat thereof, if the threat is such that, when considered in the light of its context and in light of the individual's previous acts, it is substantially supportive of an expectation that the threat will be carried out. Without hospitalization serious physical harm, serious illness, or death will occur.

177.   Plaintiff did not meet that definition or criteria.

178.   A danger to others can be defined as Judgment of a person who has a mental disorder is so impaired that the person is unable to understand their need for treatment and as a result of the person's mental disorder the person's continued behavior can reasonably be expected, on the basis of competent medical opinion, to result in serious physical harm.

179.   Plaintiff did not meet that definition or criteria.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

180.   If he had, his own doctor would have had a duty to warn – at minimum – the purported target of harm that Plaintiff was a danger to that target.

181.   Plaintiff's doctor never warned anyone that he was a harm to others – because he was not.

182.   Gravely disabled can be defined as Condition evidenced by behavior in which a person, as a result of a mental disorder, is likely to come to serious physical harm or serious illness because the person is unable to provide for their own basic physical needs.

183.   Plaintiff did not meet that definition or criteria.

184.   Persistently or acutely disabled can be defined as: Severe mental disorder that meets all the following criteria: (a) If not treated has a substantial probability of causing the person to suffer or continue to suffer severe and abnormal mental, emotional, or physical harm that significantly impairs judgment, reason, behavior or capacity to recognize reality. (b) Substantially impairs the person's capacity to make an informed decision regarding treatment, and this impairment causes the person to be incapable of understanding and expressing an understanding of the advantages and disadvantages of accepting treatment and understanding and expressing an understanding of the alternatives to the particular treatment offered after the advantages, disadvantages and alternatives are explained to that person. (c) Has a reasonable prospect of being treatable by outpatient, inpatient or combined inpatient and outpatient treatment.

185.   Plaintiff did not meet that definition or criteria.

186.   Defendants – each and every one of them – participated in a scheme to violate Plaintiff's rights and based on false information, they deprived Plaintiff of life and liberty.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

187.    On July 29, 2021 in case #MH2021-005665, the Court held that Plaintiff was "persistently and acutely disabled."

188.    This was ordered despite the facts alleged herein and without Plaintiff being allowed to attend and defend himself.

CLAIMS FOR RELIEF

**COUNT I**
**Violation of Plaintiff's Civil Rights under 42 U.S.C. § 1983 - Unwarranted Seizure of Plaintiff's Person**

189.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth herein.

190.    Plaintiff is guaranteed important protections under the Fourth and Fourteenth Amendments to the United States Constitution.

191.    The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  This applies to actions taken by state officers under the Due Process Clause of the Fourteenth Amendment.  In general, law enforcement officials may not infringe upon these rights without probable cause and/or a warrant.

192.    Without provocation, or permission, and after failing to consider available evidence, Defendants took Plaintiff into custody and caused Plaintiff to be involuntarily admitted into CBI's facilities without probable cause, a warrant, or any lawful reason, amounting to an unlawful seizure of Plaintiff's person.

193.    The reasons listed on the petition were demonstrably false and were written solely to force a treating agency to approve the petition.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

194.    Defendants – through a month's long vendetta – conspired to violate Plaintiff's Fourth Amendment Rights.

195.    As a direct and proximate result of the above-named Defendants' unwarranted seizure of Plaintiff's person, Plaintiff has suffered and will continue to suffer general and special damages in an amount to be proven at trial.

**COUNT II**
**Violation of Plaintiff's Due Process Civil Rights under 42 U.S.C. § 1983**
*(All Defendants)*

196.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth herein.

197.    Under *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001), Liberty is protected from unlawful state deprivation by the due process clause of the Fourteenth Amendment." *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir.1985) (en banc).

198.    By causing a false petition for involuntary confinement to be given to a treating agency, and by further providing the same false information to the court, Plaintiff was involuntarily committed and furnished no opportunity to defend himself from the false accusations of Defendants.

199.    Instead, Plaintiff was considered persistently and acutely disabled by the Court without having been shown the evidence that Defendants submitted a false petition.

200.    This is a violation of Plaintiff's due process rights.

201.    As a direct and proximate consequence of Defendants' acts and omissions, Plaintiff has suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish in an amount to be proven at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**JURY DEMAND**

Plaintiff demands a jury trial to all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

A.      General damages and special damages according to proof, including, but not limited to economic losses, medical costs, hedonic damages, psychological trauma, and emotional distress against each and every Defendant, jointly and severally;

B.      For taxable costs and pre- and post-judgment interest to the extent permitted by law;

C.      For exemplary and/or punitive damages against each and every Defendant in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

D.      For attorneys' fees and expenses pursuant to 42 U.S.C. § 1988 as applicable and/or as otherwise authorized by any other statute or law; and

For such other relief as the Court deems just and proper under the circumstances.

**RESPECTFULLY SUBMITTED** this 30th day of September 2024.

MILLS + WOODS LAW, PLLC

By    /s/ Sean A. Woods
          Robert T. Mills
          Sean A. Woods
          5055 N 12th Street, Suite 101
          Phoenix, AZ 85014
          *Attorneys for Plaintiff*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Lori S. Davis
lodavis@scottsdaleaz.gov
Lindsey M. Gomez-Gray
LGomezGray@scottsdaleaz.gov
**SCOTTSDALE CITY ATTORNEY'S OFFICE**
legal@scottsdaleaz.gov
3939 North Drinkwater Boulevard
Scottsdale, Arizona 85251
*Attorneys for Defendants*


        */s/ Ben Dangerfield*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## **VERIFICATION**

I, Mark Houser, state as follows:

I am the Plaintiff listed in the foregoing First Amended Verified Complaint and know the contents thereof; the allegations contained therein are true to the best of my knowledge, except those made upon information and belief, and as to those, I believe them to be true.

_____

Mark Houser

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556