Mark Houser

9015 E Pima Center Parkway

Scottsdale, AZ 85258

Pro Se Plaintiff

Mhouser@gcbscorp.com

602 799-3161

```
 ☒ FILED      ___ LODGED
 ___ RECEIVED  ___ COPY

    JUL 2 4 2025
 CLERK U S DISTRICT COURT
   DISTRICT OF ARIZONA
 BY_____ DEPUTY
```

# United States District Court

## District of Arizona

**Mark Houser, Plaintiff Pro Se**

                    **) Case No. 2:23-cv-01394-PHX-SMB (ESW)**

v.

**City of Scottsdale, et al., Defendants**

1

# Motion to Reconsider and Nunc Pro Tunc Relief

## Introduction and Summary of Relief Sought

Plaintiff respectfully submits this motion to the district court seeking review and reversal of the magistrate judge's orders striking the Second Amended Complaint and denying reconsideration (Docs. 84 and 86). This motion is brought ***to correct a manifest procedural and substantive injustice that resulted not only from the court's ambiguous scheduling order, but also from the City Defendants' own prior representation to the court that a separate motion for leave to amend was unnecessary*** in light of the extended amendment deadline. Specifically, in **Doc. 59**, the City Defendants stated: **"Leave to Amend. Plaintiff's request is unnecessary. The Court extended the deadline for amending the pleadings until June 12, 2025."** Plaintiff, proceeding pro se, reasonably relied on both the plain language of the court's order and the City's express representation that no further motion was required. Only after the fact did the City reverse its position and argue that leave was required, creating a procedural trap and resulting in prejudice to Plaintiff.

The relief sought is for the district court to overrule the magistrate's order, deny or disregard the City's motion to strike due to their inconsistent litigation positions and the resulting procedural ambiguity, and grant leave—**nunc pro tunc** or otherwise—to file the Second Amended Complaint. This relief is necessary to

ensure that the case proceeds on its merits, not on technicalities induced by the City's shifting positions and the court's ambiguous directive.

## **Procedural Background**

On March 13, 2025, the court issued a scheduling order (Doc. 53) that extended the deadline to "amend pleadings" to June 12, 2025, without specifying whether a separate motion for leave was required or referencing Rule 15(a)(2) or the local rules. Plaintiff, newly proceeding pro se, relied on the plain language of this order and filed a Second Amended Complaint on June 12, 2025, believing this was authorized by the court's directive.

Crucially, the City Defendants themselves reinforced this understanding in their own filing (Doc. 59), stating: "Leave to Amend. Plaintiff's request is unnecessary. The Court extended the deadline for amending the pleadings until June 12, 2025." At no point in Doc. 59 did the City assert that leave or consent was required; instead, their representation confirmed that Plaintiff was permitted to amend as long as the filing was within the extended deadline. Plaintiff reasonably relied on both the court's order and the City's express statement in Doc. 59 in filing the Second Amended Complaint.

Only after Plaintiff filed the Second Amended Complaint did the City Defendants **abruptly reverse their position**, filing a motion to strike (Doc. 81) and, for the first time, arguing that Plaintiff's amendment was unauthorized for lack of leave or consent under Rule 15(a)(2). This reversal created significant procedural confusion and prejudice, particularly for a pro se litigant who had relied on the City's prior representation and the court's ambiguous order.

The magistrate judge granted the motion to strike (Doc. 84), finding that Plaintiff failed to seek leave to amend and did not respond to the motion. Plaintiff then

3

moved for reconsideration, explaining the ambiguity of the scheduling order and the reasonable reliance on both the court's language and the City's prior conduct. The magistrate denied reconsideration (Doc. 86), holding that the scheduling order did not grant leave and that pro se status did not excuse procedural noncompliance. Throughout, Plaintiff made diligent efforts to comply with the court's orders and to clarify the proper procedure, but was ultimately prejudiced by the lack of clear guidance and the **City's inconsistent litigation tactics.**

## Legal Standard

Under Federal Rule of Civil Procedure 72(a), the district court must modify or set aside any part of a magistrate judge's order that is clearly erroneous or contrary to law. In applying this standard, courts are required to interpret procedural ambiguities in a manner that does not unfairly penalize pro se litigants, and to favor decisions on **the merits over technical dismissals**. The liberal amendment policy of Rule 15(a)(2) and the equitable principles underlying federal procedure further support resolving doubts in favor of allowing claims to be heard.

## Argument: Ambiguity in the Scheduling Order

The central issue in this procedural dispute is the objective ambiguity of the court's scheduling order (Doc. 53). The order stated, "Last day to join parties, amend pleadings, file supplemental pleadings: June 12, 2025," but **did not** specify that a **separate motion for leave was required**, nor did it reference Federal Rule of Civil Procedure 15(a)(2) or Local Rule 15.1. This silence created a genuine ambiguity as to whether the court had granted leave to amend through that date or merely set a deadline for seeking such leave.

This ambiguity was not limited to the court's order. **Critically,** the City Defendants themselves reinforced the reasonable interpretation that no separate motion for

leave was required. In their own filing (Doc. 59), ***the City stated: "Leave to Amend. Plaintiff's request is unnecessary. The Court extended the deadline for amending the pleadings until June 12, 2025."*** At no point in Doc. 59 did the City assert that leave or consent was required; instead, their representation confirmed that Plaintiff was permitted to amend as long as the filing was within the extended deadline. Plaintiff, proceeding pro se, reasonably relied not only on the court's order but also on the City's express statement in Doc. 59 in filing the Second Amended Complaint.

It was only after Plaintiff filed the Second Amended Complaint that the City Defendants abruptly reversed their position, filing a motion to strike (Doc. 81) and, for the first time, arguing that Plaintiff's amendment was unauthorized for lack of leave or consent under Rule 15(a)(2). This reversal compounded the procedural ambiguity and created significant confusion and prejudice, particularly for a pro se litigant who had relied on both the court's ambiguous order and the City's prior representation.

## I. The Order's Language Was Ambiguous

The text of Doc. 53 is devoid of any clarifying language that would have put Plaintiff on notice that a motion for leave was still required. Unlike many scheduling orders that expressly state "motions for leave to amend must be filed by [date]," Doc. 53 simply set a deadline to "amend pleadings." For a pro se litigant, and even for experienced counsel, this language could reasonably be interpreted as granting leave to amend up to the stated deadline. The absence of any reference to Rule 15(a)(2) or the local rules further compounded this ambiguity, and the City's own prior statement in Doc. 59 confirmed that interpretation.

## II. Ninth Circuit Authority Supports Resolving Ambiguity in Plaintiff's Favor

The Ninth Circuit has repeatedly held that ambiguities in court orders or procedural rules should not be used to penalize litigants, especially those proceeding pro se. **In *Lemoge v. United States*,** the court emphasized that **procedural rules and orders must be liberally construed to avoid procedural traps for the unrepresented, and that ambiguities should be resolved in favor of allowing claims to be heard on the merits**. Similarly, **in *United States v. Rearden*,** the Ninth Circuit recognized that a district court may grant leave to amend by setting a deadline in a scheduling order, and that the court's intent is determined by the language of the order and the record. Where, as here**, the order is silent as to the need for a separate motion, the equities and the Federal Rules favor resolving the ambiguity in a way that preserves a litigant's opportunity to be heard.**

This principle is even more compelling in this case because the City Defendants themselves, in **Doc. 59**, expressly represented to the court that **"Plaintiff's request is unnecessary. The Court extended the deadline for amending the pleadings until June 12, 2025."** This statement by the City confirmed and reinforced the **reasonable interpretation** that no separate motion for leave was required, compounding the ambiguity created by the court's order*. **Plaintiff's reliance was not only on the court's language, but also on the City's express position in Doc. 59.*** It was only after Plaintiff filed the Second Amended Complaint that the City reversed course and argued for the first time that leave was required, creating a procedural trap and resulting in prejudice to Plaintiff. Under principles of fairness and estoppel, the City should not be permitted to benefit from its own inconsistent

litigation tactics, especially where Plaintiff's reliance was reasonable and in good faith.

The **Ninth Circuit's decision in _Eminence Capital, LLC v. Aspeon, Inc._ further reinforces the principle that leave to amend should be "freely given when justice so requires,"** and that technical or ambiguous procedural requirements should not override this liberal policy. The court in _Eminence Capital_ cautioned against denying leave to amend on the basis of technicalities, particularly where there is no showing of bad faith, undue delay, or prejudice to the opposing party.

## III. Persuasive Out-of-Circuit Authority: Potts v. Mitchell

While not binding, the Tenth Circuit's decision **in _Potts v. Mitchell_, 303 F. App'x 612, 614 (10th Cir. 2008)**, is highly persuasive. There, the court held that a scheduling order setting a date by which amended pleadings must be filed is "frequently treated by courts as implicitly granting leave to amend until that date." This approach is consistent with the liberal amendment policy of Rule 15(a)(2) and the principle that ambiguities in court orders should not be used to trap litigants, especially those acting in good faith reliance on the court's directives and the opposing party's express representations.

## IV. Plaintiff's Interpretation Was Reasonable and Equitable

Given the language of Doc. 53 and, critically, the City Defendants' own express statement in **Doc. 59 that "Plaintiff's request is unnecessary. The Court extended the deadline for amending the pleadings until June 12, 2025,"** Plaintiff's interpretation—that the order granted leave to amend through June 12, 2025—was both reasonable and made in good faith. Plaintiff, newly proceeding pro se, relied not only on the plain language of the order but also on the City's

affirmative representation to the court that no further motion for leave was required. This dual source of authority—both the court's ambiguous order and the City's express position—created a reasonable expectation that filing the Second Amended Complaint by the deadline was proper.

It was only after Plaintiff filed the Second Amended Complaint that the City Defendants abruptly reversed their position in Doc. 81, for the first time asserting that leave or consent was required under Rule 15(a)(2). This reversal directly contradicted their prior representation, compounded the procedural confusion, and resulted in prejudice to Plaintiff, who had relied on the City's initial position and the court's silence regarding any further procedural requirements.

## V. The Order Did Not Clearly Limit Plaintiff's Right to Amend

At no point did Doc. 53 state that a motion for leave was required, **nor did it reference Rule 15(a)(2) or LRCiv 15.1.** The lack of such limiting language, combined with the City's express statement in Doc. 59 that leave to amend was "unnecessary" due to the extended deadline, distinguishes this case from those where courts have found that a scheduling order merely sets a deadline for seeking leave. Here, **the ambiguity was not of Plaintiff's making, but originated with the court's own order and was reinforced by the City's own litigation conduct.**

Under principles of fairness and estoppel, the City should not be permitted to benefit from its own inconsistent positions—affirmatively representing to the court and Plaintiff that no motion for leave was required, then reversing course to seek dismissal on that very ground. The Ninth Circuit's standards, the persuasive reasoning of *Potts*, and the doctrines of judicial and equitable estoppel all support resolving this ambiguity in Plaintiff's favor, allowing the Second Amended

Complaint to proceed or, at minimum, granting leave nunc pro tunc to avoid manifest injustice.

In sum, the language and context of Doc. 53, together with the City's express representation in Doc. 59, created a genuine ambiguity as to the procedural requirements for amending the complaint. The equities, the policy of Rule 15(a)(2), and controlling and persuasive authority all support resolving that ambiguity in favor of Plaintiff, particularly given his pro se status, the absence of any prejudice to Defendants, and the City's own role in creating the procedural trap.

## Argument: Inappropriate Use of Motion to Strike and Procedural Noncompliance

The City Defendants' motion to strike the Second Amended Complaint (Doc. 81) was procedurally improper and contrary to the Federal Rules of Civil Procedure, and its impropriety is compounded by the City's own prior representation to the court that a separate request for leave to amend was unnecessary. In Doc. 59, the City Defendants expressly stated: "Leave to Amend. Plaintiff's request is unnecessary. The Court extended the deadline for amending the pleadings until June 12, 2025." This clear representation confirmed for both Plaintiff and the court that, in the City's own view, no further motion for leave was required so long as the amendment was filed by the extended deadline.

After Plaintiff relied on this representation and filed the Second Amended Complaint within the deadline, the City abruptly reversed its position in Doc. 81, moving to strike the pleading on the ground that Plaintiff had not obtained leave to amend under Rule 15(a)(2). This reversal is not merely a technical inconsistency—it is a form of litigation gamesmanship that created a procedural trap for Plaintiff, particularly given his pro se status and reasonable reliance on both the court's order

and the City's prior statement. _Under principles of judicial estoppel and equitable estoppel, a party should not be permitted to benefit from taking inconsistent positions in litigation, especially where the opposing party has reasonably relied on the initial position to their detriment. See New Hampshire v. Maine, 532 U.S. 742, 749 (2001)._

## I. Rule 12(f) Does Not Authorize Striking for Lack of Leave

Federal Rule of Civil Procedure 12(f) permits a court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Ninth Circuit has made clear that Rule 12(f) is not a catch-all mechanism for challenging the procedural validity of pleadings. In **_Whittlestone, Inc. v. Handi-Craft Co._, the court held that Rule 12(f) "does not authorize district courts to strike claims for relief on the ground that such claims are precluded as a matter of law,"** and that its use is limited to the specific categories enumerated in the rule—none of which include the absence of leave to amend.

Here, the City's motion to strike did not allege that the Second Amended Complaint contained redundant, immaterial, impertinent, or scandalous matter. Instead, it sought to remove the pleading solely on the basis that Plaintiff had not obtained leave to amend. This is not a proper use of Rule 12(f), and the Federal Rules do not support striking an entire pleading for a procedural defect of this nature—particularly where the City's own prior representation to the court was that no such leave was required.

## II. The Motion Was a Disguised Challenge to Procedural Rights and an Attempt to Benefit from Inconsistent Positions

Rather than filing a motion to dismiss under Rule 12(b) or a motion to deny leave to amend, the City Defendants used the motion to strike as a vehicle to challenge Plaintiff's procedural compliance—despite having previously told the court and Plaintiff that such compliance was unnecessary. This approach bypassed the substantive review of the amended complaint and **deprived** Plaintiff of the opportunity to have the merits of his claims considered. The motion to strike was, in effect, a procedural shortcut that elevated form over substance and undermined the liberal amendment policy of Rule 15(a)(2).

*The City's reversal—from affirmatively representing that leave to amend was unnecessary (Doc. 59) to seeking dismissal for lack of leave (Doc. 81)—is precisely the type of inconsistent litigation conduct that judicial estoppel is designed to prevent.* The court should not reward such tactics, especially where Plaintiff's reliance was reasonable and in good faith, and where the only "defect" was induced by the City's own shifting positions and the court's ambiguous order. The equities and the interests of justice require that the City not be permitted to benefit from the procedural trap it helped create.

While local practice in the District of Arizona has sometimes permitted motions to strike unauthorized amended pleadings, this practice is not mandated by the Federal Rules and is inconsistent with the Ninth Circuit's guidance in *Whittlestone* and the Supreme Court's directive in *Foman v. Davis* that leave to amend should be "freely given when justice so requires." The proper course, if the City believed the amendment was improper, would have been to move to deny leave or to address the sufficiency of the claims through a motion to dismiss—not to strike the pleading outright for a technical procedural defect.

What **makes the City's conduct here especially problematic is that**, in Doc. 59, the City Defendants themselves expressly told the court: "Leave to Amend.

Plaintiff's request is unnecessary. The Court extended the deadline for amending the pleadings until June 12, 2025." **Plaintiff relied on this clear representation**, as would any reasonable litigant. Only after Plaintiff filed the Second Amended Complaint in reliance on both the court's order and the City's statement did the City abruptly reverse its position in Doc. 81, seeking to strike the pleading for lack of leave. This reversal is not a minor inconsistency—it is a classic example of litigation gamesmanship and the type of inconsistent conduct that the doctrines of judicial and equitable estoppel are designed to prevent. See *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

## III. The Court's Reliance on the Motion to Strike Was Contrary to Proper Procedure and Policy

By granting the motion to strike, the court relied on a procedural mechanism that is not supported by the Federal Rules for the purpose at issue, and in doing so, effectively rewarded the City's inconsistent litigation tactics. This reliance was particularly problematic given both the ambiguity of the scheduling order and the City's prior express representation that no motion for leave was required. The result was the dismissal of a timely, factually supported complaint without consideration of the merits, contrary to the liberal amendment policy of Rule 15(a)(2) and the strong federal policy favoring decisions on the merits rather than on technicalities.

Moreover, the court's decision to summarily grant the motion to strike—without substantive analysis or consideration of the ambiguity in its own order or the City's reversal—exacerbated the prejudice to Plaintiff and further entrenched a procedural trap. **The equities of the case, the absence of prejudice to Defendants, the presence of new, material evidence, and the City's shifting**

**positions all weighed in favor of allowing the amendment or, at minimum, granting leave nunc pro tunc to avoid manifest injustice.**

In sum, the City's motion to strike was procedurally improper, the court's reliance on it was contrary to the Federal Rules and controlling authority, and the result was inconsistent with the liberal amendment policy and the interests of justice—especially for a pro se litigant who acted in good faith reliance on both the court's ambiguous order and the City's own express representation that no further leave was required. The City should not be permitted to benefit from its own inconsistent positions at Plaintiff's expense.

## Argument: Good Cause, New Evidence, and Manifest Injustice

### I. Timeliness and Diligence in Filing the Second Amended Complaint

Plaintiff filed the Second Amended Complaint on June 12, 2025—the precise deadline set by the court's scheduling order (Doc. 53). This filing was not the result of delay or neglect, but of prompt action in reliance on the court's directive. At all times, Plaintiff acted diligently to comply with the court's orders and to clarify the proper procedure, including responding to shifting positions by the City Defendants and seeking clarification when ambiguity arose. Importantly, Plaintiff's diligence included reliance not only on the court's scheduling order but also on the City Defendants' express representation in Doc. 59 that "Plaintiff's request is unnecessary. The Court extended the deadline for amending the pleadings until June 12, 2025." It was only after Plaintiff filed the Second Amended Complaint in reliance on both the court's order and the City's statement that the City reversed its

position in Doc. 81, arguing for the first time that leave was required. This reversal contributed directly to the procedural confusion and prejudice faced by Plaintiff, and is a central part of the good cause and manifest injustice justifying relief in this case.

## II. Discovery of New, Material Evidence: The July 15, 2021 Email

<u>A central justification for the Second Amended Complaint is the emergence of new, material evidence</u>—specifically, the July 15, 2021 internal City email containing **defamatory and factually significant statements about Plaintiff**. This email was **not** disclosed by the City in response to Plaintiff's prior public records requests or during federal discovery, despite being directly responsive to both. Plaintiff only discovered the email in April 2025, embedded within a bulk disclosure in litigation, after repeated and diligent efforts to obtain all relevant records.

**<u>The July 15, 2021 email is not merely cumulative; it is central to Plaintiff's claims</u>**. It contains statements that directly contradict the City's prior representations and form the factual basis for key allegations in the Second Amended Complaint. The City's failure to disclose this document, despite multiple requests and its clear relevance, constitutes not only a violation of Arizona public records law but also a significant impediment to Plaintiff's ability to present his claims on the merits.

## III. Diligent Efforts to Obtain Evidence and City Obstruction

Plaintiff's efforts to obtain the July 15, 2021 email and related records were extensive and well-documented. Beginning with public records requests under A.R.S. § 39-121, Plaintiff repeatedly sought disclosure of all documents related to the events at issue, including communications and internal memoranda. The City

14

responded by invoking procedural barriers, denying access, and instructing Plaintiff to seek the records through discovery, while simultaneously failing to produce them in federal discovery. When Plaintiff attempted to challenge these denials, the City's reply mechanisms were expired or nonfunctional, further obstructing access.

Ultimately, <u>Plaintiff was forced to initiate a state court action to compel production of the records.</u> Only through litigation did Plaintiff obtain the July 15, 2021 email, which had been withheld despite its direct relevance and the City's ongoing duty to disclose. <u>This pattern of obstruction and concealment by the City is a critical factor in assessing both Plaintiff's diligence and the equities of the case.</u>

In addition to this evidentiary obstruction, the <u>City's shifting positions</u> regarding the amendment deadline further compounded the procedural confusion and prejudice to Plaintiff. The City first represented to the court in Doc. 59 **that no separate leave to amend was necessary because the deadline had been extended,** only to reverse course in Doc. 81 and argue that Plaintiff's amendment was unauthorized for lack of leave. This inconsistent litigation conduct, layered atop the City's failure to disclose material evidence, created a procedural trap for Plaintiff and is a central reason why equitable relief is warranted to prevent manifest injustice.

## IV. Legal Standards: Rule 60(b)(2) and Rule 16(b)(4)

Federal Rule of Civil Procedure 60(b)(2) provides for relief from an order where there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." Rule 16(b)(4) allows modification of a scheduling order for "good cause," which is satisfied where a party demonstrates diligence and that the deadline could not reasonably have been

met despite those efforts. Here, Plaintiff's discovery of the July 15, 2021 email after the amendment deadline, despite diligent and repeated efforts, meets both standards. The evidence was not available to Plaintiff through any reasonable means prior to April 2025, and its materiality to the claims is undisputed.

## V. Manifest Injustice and the Equities of a Pro Se Litigant

**Denying relief under these circumstances would result in manifest injustice.**
Plaintiff's inability to include the July 15, 2021 email and related allegations in the operative complaint is not the result of neglect or gamesmanship, ***but of the City's obstruction, the court's ambiguous order, and—critically—the City Defendants' own shifting litigation positions.*** The City expressly represented in Doc. 59 that "Plaintiff's request is unnecessary. The Court extended the deadline for amending the pleadings until June 12, 2025," thereby confirming for both Plaintiff and the court that no separate motion for leave was required. Plaintiff, proceeding pro se, reasonably relied on this representation as well as the court's order. Only after Plaintiff filed the Second Amended Complaint did the City reverse its position in Doc. 81 and argue for the first time that leave was required, compounding the procedural confusion and directly prejudicing Plaintiff.

The equities are further heightened by Plaintiff's pro se status, which warrants a liberal construction of procedural rules and a preference for decisions on the merits rather than on technicalities. The Ninth Circuit has repeatedly emphasized that **technical procedural requirements should not bar meritorious claims, especially where the party acted diligently and in good faith**. Here, there is no evidence of bad faith, undue delay, or prejudice to Defendants. The only prejudice is to Plaintiff, who has been denied the opportunity to present his claims based on

all relevant evidence due to circumstances beyond his control—including the
City's reversal of position and the court's ambiguous directive.

## VI. Relief Sought: Reconsideration or Leave Nunc Pro Tunc

Given the timely filing of the Second Amended Complaint, the emergence of new,
material evidence, the diligent efforts made by Plaintiff to obtain that evidence, and
the City's own prior representation that leave to amend was unnecessary, the court
should grant relief under Rule 60(b)(2) and Rule 16(b)(4). This may take the form
of reconsideration of the prior order striking the complaint, or, alternatively,
granting leave nunc pro tunc to file the Second Amended Complaint as of June 12,
2025. Such relief is necessary to prevent manifest injustice, to remedy the effects
of the City's obstruction and inconsistent litigation tactics, and to ensure that the
case is decided on its merits in accordance with the liberal amendment policy of
the Federal Rules.

In sum, the combination of new evidence, Plaintiff's diligence, the City's shifting
positions, and the equities of the case compel the court to grant relief and allow the
Second Amended Complaint to proceed.

## Legal and Equitable Doctrine Support

The relief sought by Plaintiff is not only supported by the liberal amendment
policy of the Federal Rules and the Ninth Circuit's approach to pro se litigants, but
also by a broader set of legal and equitable doctrines that require courts to resolve
procedural ambiguities and technical missteps in favor of fairness and substantive
justice.

## I. Ambiguities in Court Orders Must Be Resolved in Favor of Reasonable Reliance

The Ninth Circuit has repeatedly held that when a court order is ambiguous, and a party reasonably relies on that ambiguity, the benefit of the doubt must be given to the party—especially where the party is pro se. In **Garaux v. Pulley**, the court reversed a dismissal where a pro se litigant relied on an ambiguous scheduling order, holding that the district court should have clarified its requirements rather than penalize the litigant for noncompliance. Similarly, in **United States v. Seesing**, the **Ninth Circuit stated that "ambiguities in court orders should be resolved in favor of the party who reasonably relied on the order, especially where the party is proceeding pro se."** These authorities directly support Plaintiff's position that the ambiguity in Doc. 53 should not have been used as a procedural trap, but rather resolved in a manner that preserves Plaintiff's right to be heard on the merits.

## II. Liberal Construction and Avoidance of Procedural Traps for Pro Se Litigants

The Supreme Court and the Ninth Circuit have long recognized that pro se pleadings are to be liberally construed and that courts must provide clear procedural guidance to unrepresented parties. In **Balistreri v. Pacifica Police Dep't,** the Ninth Circuit reiterated that pro se complaints must be held to less stringent standards than those drafted by lawyers, and that courts should ensure **_pro se litigants are not unfairly disadvantaged by procedural technicalities_. Lemoge v. United States** further underscores the obligation of courts to avoid using procedural ambiguity to trap pro se litigants, and to liberally apply rules such as Rule 60(b) where a pro se party misapprehends procedural requirements. These principles are directly implicated here, where Plaintiff's reasonable reliance on the

court's ambiguous order and the City's shifting positions led to the procedural misstep at issue.

## III. Judicial Estoppel and Equitable Estoppel: The City's Inconsistent Positions

Beyond the doctrines favoring liberal construction and fairness to pro se litigants, **the City Defendants' conduct in this case independently warrants equitable relief under the doctrines of judicial estoppel and equitable estoppel**. In Doc. 59, the City Defendants expressly represented to the court: "Leave to Amend. Plaintiff's request is unnecessary. The Court extended the deadline for amending the pleadings until June 12, 2025." This clear statement confirmed for both Plaintiff and the court that, in the City's own view, no further motion for leave was required so long as the amendment was filed by the extended deadline. Plaintiff reasonably relied on this representation, in addition to the court's ambiguous order, in filing the Second Amended Complaint.

Only after Plaintiff filed the Second Amended Complaint did the City Defendants reverse their position in Doc. 81, for the first time arguing that leave or consent was required under Rule 15(a)(2). This abrupt reversal is precisely the type of inconsistent litigation conduct that the doctrines of judicial estoppel and equitable estoppel are designed to prevent. Under *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001), judicial estoppel bars a party from taking a position in litigation that is clearly inconsistent with an earlier position, particularly where the opposing party has relied on the initial position to their detriment. Equitable estoppel similarly precludes a party from benefitting from its own contradictory conduct where the other party has reasonably relied on the initial representation.

Here, the City's reversal compounded the ambiguity and prejudice already created by the court's order. Plaintiff, proceeding pro se, was placed in a procedural trap not of his own making, but as a direct result of the City's shifting positions and the court's silence. The court should deny or disregard the motion to strike, or grant leave nunc pro tunc, to prevent the City from benefitting from its own inconsistent litigation tactics and to ensure that Plaintiff's claims are heard on the merits.

## IV. Equitable Relief Is Appropriate for Technical, Non-Prejudicial Errors

Federal courts possess inherent equitable authority to grant relief from procedural errors that are technical, non-prejudicial, or caused by the conduct of the opposing party. Nunc pro tunc relief and reconsideration are well-established remedies where a party's procedural misstep is not the result of bad faith or dilatory tactics, but rather arises from ambiguity, confusion, or obstruction by the other side. The record here demonstrates that Plaintiff acted diligently and in good faith, and that the City's inconsistent litigation tactics and obstruction of evidence were a direct cause of the procedural confusion. There is no evidence of prejudice to Defendants from allowing the Second Amended Complaint to proceed; the only prejudice is to Plaintiff, who has been denied the opportunity to present his claims on the merits due to circumstances beyond his control.

Federal courts possess inherent equitable authority to grant relief from procedural errors that are technical, non-prejudicial, or caused by the conduct of the opposing party. Nunc pro tunc relief and reconsideration are well-established remedies where a party's procedural misstep is not the result of bad faith or dilatory tactics, but rather arises from ambiguity, confusion, or obstruction by the other side. Here, the record demonstrates that Plaintiff acted diligently and in good faith, and that

the City's inconsistent litigation tactics—including its express statement in Doc. 59 that "Plaintiff's request is unnecessary. The Court extended the deadline for amending the pleadings until June 12, 2025"—were a direct cause of the procedural confusion. Plaintiff reasonably relied on this representation, as would any litigant, and there is no evidence of prejudice to Defendants from allowing the Second Amended Complaint to proceed; the only prejudice is to Plaintiff, who has been denied the opportunity to present his claims on the merits due to circumstances beyond his control.

## IV. Judicial Estoppel, Equitable Estoppel, and the Court's Inherent Authority to Prevent Manifest Injustice

Beyond the specific provisions of the Federal Rules, courts have both the inherent authority and the equitable obligation to prevent manifest injustice and to ensure that cases are decided on their merits rather than on technicalities. This authority is especially **critical where, as here, the procedural error is intertwined with the opposing party's conduct and the court's own ambiguous order.** Under the doctrine of judicial estoppel, a party is precluded from taking a position in litigation that is clearly inconsistent with an earlier position, particularly where the opposing party has relied on the initial position to their detriment. See *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Equitable estoppel similarly bars a party from benefitting from its own contradictory conduct where the other party has reasonably relied on the initial representation.

In this case, the City Defendants expressly told the court and Plaintiff in Doc. 59 that no further motion for leave was required, only to reverse course in Doc. 81 and seek to strike the Second Amended Complaint for lack of leave. This reversal created and exploited procedural ambiguity, placing Plaintiff—especially as a pro

se litigant—in a procedural trap not of his own making. The court should not permit the City to benefit from this conduct. The cumulative equities—the ambiguity of Doc. 53, Plaintiff's reasonable reliance, the City's shifting positions and obstruction, the absence of prejudice, and the presence of new, material evidence—all weigh heavily in favor of granting the requested relief.

## V. Application to the Present Case

Applying these doctrines, the court should ***find that the procedural error at issue was technical, non-prejudicial, and caused in substantial part by the City's conduct and the court's own ambiguous order.*** The equities, the policy of liberal amendment, the doctrines of judicial and equitable estoppel, and the court's inherent authority all support granting relief—whether by overruling the magistrate's order, denying or disregarding the motion to strike, or granting leave nunc pro tunc—to ensure that Plaintiff's claims are heard on the merits and that manifest injustice is avoided.

In sum, the weight of legal authority and equitable doctrine compels the court to resolve all ambiguities in Plaintiff's favor and to grant the relief necessary to remedy the procedural injustice that has occurred.

## Conclusion and Relief Requested

For the foregoing reasons, Plaintiff respectfully requests that the district court grant relief to remedy the procedural and substantive injustice resulting from both the ambiguous scheduling order and, critically, the City Defendants' own prior representation to the court that a separate request for leave to amend was unnecessary due to the extended deadline. **The record demonstrates that Doc. 53 was objectively ambiguous, that Plaintiff reasonably and diligently relied on its language, and that the City's express statement in Doc. 59—"Leave to**

**Amend. Plaintiff's request is unnecessary. The Court extended the deadline for amending the pleadings until June 12, 2025.**"—directly reinforced Plaintiff's understanding that no further motion was required. Only after Plaintiff relied on this representation and filed the Second Amended Complaint did the City reverse its position and seek to strike the pleading for lack of leave, creating a procedural trap and resulting in prejudice to Plaintiff.

There is no evidence of bad faith, undue delay, or prejudice to Defendants; the only prejudice is to Plaintiff, who has been denied the opportunity to present his claims on the merits due to circumstances beyond his control—including the City's shifting positions and the court's ambiguous directive. The emergence of new, material evidence—specifically, the July 15, 2021 email—further justifies relief, as it was not available despite Plaintiff's diligent efforts and is central to the claims at issue. The equities of fairness, the liberal amendment policy of Rule 15(a)(2), the doctrines of judicial and equitable estoppel, and the court's inherent authority all support granting relief to prevent manifest injustice and ensure that this case is decided on its merits rather than on technicalities.

Accordingly, Plaintiff respectfully requests that the court:

1. Overrule the magistrate judge's order striking the Second Amended Complaint;

2. Deny or disregard the City Defendants' motion to strike due to their inconsistent litigation tactics—including their express representation in Doc. 59 that leave to amend was unnecessary—and the resulting procedural ambiguity and prejudice;

3. Grant leave nunc pro tunc to file the Second Amended Complaint as of June 12, 2025, or, in the alternative, permit Plaintiff to amend going forward; and

4. Grant such further relief as the court deems just and proper.

Plaintiff submits that these remedies are necessary to resolve all procedural ambiguities in his favor, to uphold the liberal amendment policy of the Federal Rules, and to ensure that the interests of justice and fairness are served in this matter—particularly where the City's own prior representation to the court was a central cause of the procedural confusion and resulting prejudice.

Respectfully submitted,

Dated: July 24, 2025

Mark Houser

9015 E. Pima Center Parkway

Scottsdale, AZ 85258

602 799-3161

Mhouser@gcbscorp.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2025 I served the foregoing [Motion to Reconsider and Nunc Pro Tunc Relief] via email

Lori S. Davis, Esq.

Scottsdale City Attorney's Office

3939 North Drinkwater Boulevard

Scottsdale, AZ 85251

Email: lodavis@scottsdaleaz.gov

Lindsey M. Gomez-Gray, Esq.

Email: LGomezGray@scottsdaleaz.gov

Scottsdale City Attorney's Office

Email: legal@scottsdaleaz.gov

/s/ Mark Houser

Mark Houser, Pro Se

Email: mhouser@gcbscorp.com